## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| MARY KAY COLLITON, individually and on behalf of a class of similarly situated persons,<br><br>       Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>       Defendant. | **Civil Action No. 2:19-cv-2440-RMG**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Mary Kay Colliton, through her attorneys, brings this action on behalf of herself and all other persons similarly situated, and except as to those allegations pertaining to Plaintiff and her own action, which allegations are based upon personal knowledge, alleges the following upon information and belief and investigation of her counsel against Defendant, Bank of America, N.A.:

## NATURE OF THE ACTION

1.      This is a class action for breach of contract, and for unjust enrichment.

2.      Defendant Bank of America, N.A. ("BOA" or "Defendant") has a systemic practice of collecting post-payment interest on loans insured by the Federal Housing Administration ("FHA") without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans. As a result, Defendant has unfairly collected and unjustly retained potentially millions of dollars in post-payment interest in an unlawful manner. Defendant breached its contract with Plaintiff Mary Kay Colliton ("Colliton" or "Plaintiff") and other class members and was unjustly enriched through its unlawful practice.

3.     Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan. For example, if a borrower pays off the loan in full on November 21, and the lender continues collecting interest for the remainder of November, the lender has collected post-payment interest from the borrower. Any interest collected after the borrower makes payment of the full unpaid principal is post-payment interest.

4.     A promissory note governs the contractual relationship between borrowers and lenders, and the FHA regulations require that lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans. Among other things, the uniform provisions require that "[i]nterest will be charged on unpaid principal" and interest charges must stop once "the full amount of the principal has been paid." See specimen Multistate – FHA Fixed Rate Note, attached as **Exhibit A**, at 1.[1] The sole exception to those provisions is that lenders may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by [**FHA**] regulations**." *Id.*, at 2 (emphasis added).

5.     The FHA regulations prohibit lenders from collecting post-payment interest unless each of two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the [**FHA**].**" 24 C.F.R. § 203.558(c) (2014) (emphasis added).

6.     Regardless of the date of payment, if the lender does not provide the borrower with the FHA-approved form, the second condition is not met and the lender may not collect post-payment interest.

7.     The FHA requires use of its approved form because the form explains to

---

[1]     The actual Note(s) for the loan(s) to Plaintiff should be in the possession and control of Defendant and thus should be obtainable through ordinary discovery.

borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest. *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8(C), attached as Exhibit B. The form also explains the terms under which the lender can collect post-payment interest and how the borrower can avoid paying any such charges. *Id.*

8.      Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, Defendant does not use the FHA-approved form. Instead, Defendant used its own form, which is not the form approved by the FHA, and does not compliantly disclose the terms under which Defendant can collect post-payment interest or properly explain how the borrower can avoid paying any such charges.

9.      Because Defendant does not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, Defendant had no right to collect post-payment interest from borrowers. Yet, on information and belief, Defendant has unlawfully collected millions of dollars in post-payment interest from Plaintiff and the Class, and it will continue to do so in the future. Through this class action, Plaintiff seeks to recover damages for those Class members who have been injured by Defendant's unlawful practice.

## PARTIES

10.      Colliton is a citizen and resident of South Carolina. On August 29, 2016, Colliton paid off an FHA-insured loan held by Defendant.

11.      On information and belief, Defendant Bank of America, N.A. is a National Association, with its principal executive offices located in Charlotte, North Carolina, and which held, or continues to hold, FHA-insured loans. Defendant is a wholly owned subsidiary of BANA Holding Corporation, which is a wholly owned subsidiary of BAC North America

3

Holding Company, which is a wholly owned subsidiary of NB Holdings Corp., which is a wholly owned subsidiary of Bank of America Corporation, a publicly held Delaware corporation.  At all times relevant hereto, Defendant was doing business in the State of South Carolina and in this division.

12.    On information and belief, Defendant may be served through its registered agent for service of process, CT Corporation System, at the following address: 2 Office Park Court Suite 103, Columbia, South Carolina 29223.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, and also 28 U.S.C. § 1332(a) and (d).  Subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified as 28 U.S.C. § 1332(d)(2), exists because, on information and belief, the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than Plaintiff and most Class Members.

14.    This Court has personal jurisdiction over Defendant. Among other things, Defendant has conducted business in South Carolina, holds and/or services mortgages on real property in South Carolina, has breached contracts with persons located in South Carolina, has caused injuries in South Carolina, and in doing so, has engaged in substantial activity in South Carolina. Defendant thus has sufficient minimum contacts with South Carolina, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice

15.    This Court is also a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2). Venue is proper in this District because Colliton resides in this District, because Defendant committed a statutory tort within this District and because the claim arises from the

4

substantial acts and conduct undertaken and having effect within this District.

16.    Intra-District Assignment: Pursuant to Civil L.R. 3.01, assignment to the Charleston Division of the District of South Carolina (the "Division") is proper because a substantial part of the events or omissions which give rise to the claims herein occurred in this Division. Defendant has conducted business in this Division, holds and/or services mortgages on real property in this Division, breached contracts with persons located in this Division, and has caused injuries in this Division. Further, Plaintiff resides in this Division.

## FACTUAL ALLEGATIONS

**A.    Borrowers Pay For Mortgage Insurance Supplied To Lenders By The FHA.**

17.    Department of Housing and Urban Development ("HUD") is a department within the executive branch of the United States government. HUD was established in 1965 by the Department of Housing and Urban Development Act. *See* 42 U.S.C. § 3532. The Federal Housing Administration was established in 1934 by the National Housing Act of 1934. *See* 12 U.S.C. § 1701. When HUD was created, Congress re-organized the FHA as an agency within HUD.

18.    Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes. *See* United States Department of Housing and Urban Development,    http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory. The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single-family homes.  *Id.*

19.    Mortgage insurance protects lenders against losses caused by borrower defaults. The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default. *Id.* In exchange for FHA mortgage insurance, borrowers pay an upfront

mortgage insurance premium and also make monthly premium payments.

20.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA. Lenders must also comply with FHA regulations including, but not limited to, the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations. Among other things, the FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note. As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

21.     Defendant derives substantial economic benefits from its participation in the FHA mortgage insurance program.

22.     All lenders who participate in the FHA mortgage insurance program, including Defendant, have a duty to comply with the mandatory notice provisions of the FHA regulations.

**B.     The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless The Lender First Provides An FHA-Approved Form.**

23.     One provision lenders uniformly must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

> 2.     BORROWER'S PROMISE TO PAY; INTEREST
>
> In return for a loan received from Lender, Borrower promises to pay the principal sum of_____Dollars (U.S. $_____), plus interest, to the order of Lender. **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of_____percent (_____%) per year **until the full amount of the principal has been paid**.

*See* Exhibit A, FHA Multistate Fixed Rate Note, at 1, ¶ 1 (emphasis added).

24.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues. This

makes sense because, by definition, interest is calculated based on the amount of the outstanding principal loaned by the lender to the borrower.

25.    In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

26.    However, for roughly thirty years, the FHA has maintained a policy different from the other government agencies. For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

27.    This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed. In effect, the lender is penalizing the borrower for paying the loan before the maturity date.

28.    Although the FHA permits lenders to penalize borrowers by collecting post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so. The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations. Chief amongst those regulations is a requirement to provide the borrower with the FHA-approved disclosure form.

29.    The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

5.    BORROWER'S RIGHT TO PREPAY

**Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any**

7

> **month**. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

*See* Exhibit A, FHA Multistate Fixed Rate Note, at 1, ¶ 5 (emphasis added).

30.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month. The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

31.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

> (a)  With respect to FHA mortgages insured on or after August 2, 1985, but closed before January 21, 2015, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice. If the prepayment is offered on other than an installment due date, the mortgagee may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the mortgagee so advises the mortgagor, in a form approved by the Commissioner, in response to the mortgagor's inquiry, request for payoff figures, or tender of prepayment.**
>
> (3)  If the mortgagee fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, **the mortgagee may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received**[.]

24 C.F.R. § 203.558 (2012) (emphasis added).

32.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

8

33.    For mortgages insured on or after August 2, 1985 and through January 20, 2015, the FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR

(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____          Date: _____
Address: _____          Loan #: _____
_____          FHA#: _____

This is in reply to your_____(date)_____inquiry/request    for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

The_____(mortgagee name)_____will:

(a)    [ ]    accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)    [ ]    only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

[…]

NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact _____ (name and/or department) _____ at _____ (telephone number) _____.

_____
Mortgagee

Attachment (Pay off Statement)

Exhibit B, HUD Housing Handbook, 4330.1 REV-5, Appendix 8(C).

9

34.    As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5- 1(C), at 2, attached as Exhibit C (emphasis added).

35.    HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined. **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6 (emphasis added).

36.    HUD also expressly instructs lenders that "[**n**]**one of the HUD-required language should be deleted**." *Id.* at 2 (emphasis added).

37.    In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month **and** (b) the lender has provided the borrower **the FHA-approved form**. If the lender satisfies both of those requirements, then, **and only then**, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

38.    From August 2, 1985 through January 20, 2015, lenders, including Defendant, have collected millions of dollars in post-payment interest.

39.    The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments." Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, April 11, 2004, http://articles.chicagotribune.com/2004-04-

10

11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers, attached as Exhibit D. The NAR further "estimate[s] that during 2003, ... FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

40.    "HUD doesn't get the interest, lenders do. In effect, **lenders are getting interest for money that isn't outstanding**. This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012." Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, January 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/, attached as Exhibit E (emphasis added).

41.    "This practice ... has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, September 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html?utm_term=.fa9aca959b29, attached as Exhibit F (emphasis added).

42.    "[T]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**.'" Harney, Chicago Tribune, April 11, 2004, Exhibit D (emphasis added). "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off." Harney, Washington Post, September 5, 2014, Exhibit F (emphasis added).

11

43.     Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors." Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, March 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as Exhibit G (emphasis added).

44.     All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

45.     On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

46.     On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013). Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id*. at 6444.

47.     This definition includes "charges resulting from FHA's monthly interest accrual amortization method." 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014). As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties…. In such instances, **the consumer submits a payment before it is due, but the creditor**

12

> **nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (January 30, 2013) (emphasis added).

48.     Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act. *See* 79 Fed. Reg. 50835, 50835 (August 26, 2014); 75 Fed. Reg. 58539, 58586 (September 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

49.     In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

50.     Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558(a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

51.     Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive. "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are

13

not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, March 30, 2014, Exhibit G (emphasis added).

**D.    Defendant Did Not Provide the FHA-Approved Form To Plaintiff Before Collecting Post-Payment Interest.**

52.    On or about June 21, 2011, Peoples Bank Defendant loaned Colliton money for the purchase of a home in Hanahan, County of Berkeley, South Carolina. The loan was insured by the FHA, so Defendant is required to comply with FHA regulations with respect to the loan. On or about July 27, 2012, Peoples Bank assigned its Mortgage to Defendant. See Assignment of Mortgage dated July 27, 2012, attached as Exhibit H. Thereafter, on or about December 19, 2014, Plaintiff executed a separate, Subordinate Mortgage with Defendant for an additional loan. See Mortgage dated December 10, 2014, attached as Exhibit I.

53.    Pursuant to FHA regulations, the pertinent promissory note must contain certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, a paragraph titled "Borrower's Promise to Pay; Interest" and a paragraph titled "Borrower's Right to Prepay." *See* Exhibit A, FHA Multistate Fixed Rate Note, at 1.

54.    In 2016, Colliton sold the home. As part of the transaction, she requested that Defendant provide her with a payoff statement.

55.    Defendant provided a Payoff Statement dated August 9, 2016. The Payoff Statement appears to be a computer-generated form document, in which Defendant uses form language and fills in only the particular name, numbers and address information that corresponds to a specific borrower. *See* August 9, 2016, Payoff Statement from Defendant to Plaintiff, attached as Exhibit J.

56.    The form Payoff Quote reflects the loan as an FHA loan, and includes the amounts for "principal," "interest," "escrow payment," and "Total amount due," among other

uniform fields.

57.    The Payoff Statement contains the following specific numbers for Colliton's loan:

| | | |
|---|---|---|
| a. | Principal Balance: | $249,179.17; |
| b. | Interest from 8/1/16 to 8/31/116: | $    493.17; |
| c. | Mortgage Insurance premium: | $     236.06; |
| d. | Short Pmt Advance - Interest: | $      112.36; and |
| e. | Payoff statement via facsimile fee: | $       15.00 |
| f. | Total Amount Due: | $250,035.76. |

58.    Colliton's interest payments were $493.17 per month. By representing that Colliton owed $493.17 in interest, Defendant charged and sought to collect interest for the entire month of August, even though the loan was to be paid in full on August 29, 2016.

59.    On August 29, 2016, Colliton paid Defendant $250,035.76, which includes $493.17 in interest. See Outgoing Fed Funds Transfer Advice dated August 29, 2016, attached as Exhibit K.

60.    Because Defendant required Colliton to pay interest for the entire month of August – even though Colliton paid the full unpaid principal on August 29, 2016 – Defendant collected post-payment interest.

61.    However, Defendant did not first provide Colliton with the FHA-approved form. Instead, Defendant provided a form that was not FHA-approved.

62.    FHA approval of the FHA language in a payoff statement is an express requirement of the FHA regulations.

63.    FHA approval of the FHA language in a payoff statement is an express requirement for collecting post-payment interest.

64.    Moreover, Defendant's unauthorized form is both misleading and confusing. It represents that interest will be calculated on a whole, per month basis and this interest is included as part of the total amount required to release the lien. It does not disclose that Defendant cannot

15

collect post-payment interest if payment is made on the first of the month.

65.    Defendant's Payoff Statement also does not contain the mandatory consumer advisory, "NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month." *See* Exhibit B, HUD Housing Handbook, 4330.1 REV-5 Appendix 8(C) at 1-2. The omission of this HUD-required language, alone, renders the statement non-compliant. *See* Exhibit C, HUD Housing Handbook, 4330.1 REV-5, Chapter 5- 1(C), at 2 (emphasis added).

66.    Because Defendant's standard form Payoff Statement language does not comply with the mandatory language of the FHA approved form, any post-payment interest collected by Defendant violates the uniform provisions of the note and FHA regulations.

## CLASS ACTION ALLEGATIONS

67.    Colliton brings this action individually and on behalf of all other persons similarly situated pursuant to pursuant to Rule 23 of the Federal Rules of Civil Procedure.

68.    In accordance with Fed. R. Civ. P. 23(b), The class definition(s) ultimately may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Class:

> Any person who had a loan at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (i) that was insured by the FHA; (ii) that was held by Defendant as of the date on which payment of the total amount of unpaid principal was made; and (iii) for which Defendant collected interest for any period after payment of the full amount of unpaid principal was made.

Excluded from the Class are the Defendant and its employees and agents and members of the

Judiciary. Colliton reserves the right to amend the Class definition upon completion of class discovery when the contours and the parameters of class become apparent.

69.    Plaintiff reserves the right to amend the Class definitions or add a Class or Sub-Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

70.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71.    A class action is proper in that:

(a)    Numerosity – Federal Rule of Civil Procedure 23(a)(1) – The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class consists of more than forty (40) and likely thousands of persons. The number of members of the Class is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Members of the Class may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

(b)    Commonality – Federal Rule of Civil Procedure 23(a)(2) – Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. Such common questions of law or fact include, but are not limited to, the following:

(i)    The promissory notes for FHA-insured loans contain uniform provisions that require lenders to comply with FHA regulations before collecting post-payment interest. The essential issue in this case is whether, before collecting post-payment interest, Defendant complied with the FHA regulation requiring that

it provide the borrower "a **form** approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, **or tender of prepayment**." 24 C.F.R. § 203.558(b)(2) (2014) (emphasis added). Because Defendant uses form payoff statements, the answer to this essential question will be common to all members of the class. The forms used by Defendant either are or are not the FHA-approved form and that answer will be true for the entire class.

(ii)     Other common questions include whether Defendant has breached its contracts with borrowers by not providing borrowers with the FHA-approved form before collecting post-payment interest on FHA-insured loans held by Defendant; whether Defendant is liable under South Carolina or Federal usury law for not providing borrowers with the FHA-approved form before charging post-payment interest on FHA-insured loans; and whether Defendant is required, as a matter of equity, to forfeit any unlawfully collected interest.

(c)     <u>Typicality</u> – Federal Rule of Civil Procedure 23(a)(3) – Colliton's claims are typical of the Class' claims because, among other things, all members of the Class were comparably injured through Defendant's uniform misconduct described above. Colliton's promissory note is not just typical of the rest of the Class, but must be identical with respect to relevant provisions at issue in this case. Further, because Defendant uses form payoff statements, Colliton has been subject to conduct that is typical of the rest of the class. In addition, there are no defenses available to Defendant that are unique to Plaintiff or to any particular members of the Class.

(d)     <u>Adequacy of Representation</u> – Federal Rule of Civil Procedure 23(a)(4) – Colliton will fairly and adequately protect the class's interests. Colliton has a genuine interest in

protecting the rights of the class and will prosecute this action vigorously. Colliton has retained counsel that are competent and experienced in complex class action litigation. Neither Colliton nor her counsel have any interests adverse or in conflict with the Class. Further, because Colliton's challenges form payoff statements used by Defendant, the interests of Colliton and the class are aligned.

72.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual Class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible

73.    Defendant has engaged in standard, uniform conduct toward the Class with respect to collecting post-payment interest. In particular, Defendant uses form payoff statements that do not satisfy the note or FHA regulations. Thus, Defendant's conduct applies to the class generally.

(a)    <u>Insufficiency of Separate Actions</u> – Federal Rule of Civil Procedure 23(b)(1) – Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual Class members, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

(b)    <u>Common Conduct</u> – Federal Rule of Civil Procedure 23(b)(2) – Class certification also is appropriate because the Defendant has acted and refused to act in the same or

similar manner with respect to all class members, thereby making injunctive and declaratory relief appropriate.

(c)    <u>Predominance</u> – Federal Rule of Civil Procedure 23(b)(3) – Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of herself and the other members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in quality and quantity, to the numerous common questions that dominate this action. The answers to the common questions in this case will thus decide liability for the entire class. If Colliton establishes that Defendant breached the contracts by not complying with FHA regulations, it will establish liability for all class members, without the need for any additional proof as to liability. Thus, common issues predominate over individual issues.

(d)    <u>Superiority</u> – Federal Rule of Civil Procedure 23(b)(3) – A class action is superior to other available remedies. The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Colliton and other class members to obtain redress. Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class. Requiring hundreds of thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient. It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## COUNT I
## <u>BREACH OF CONTRACT</u>

74.    Colliton incorporates paragraphs 1 through 73, above, as if fully stated herein.

75.    Colliton asserts a breach of contract claim against Defendant, on behalf of herself, and the Class. Colliton, and all other members of the Class, seek damages for Defendant's improper collection of post-payment interest.

76.    Colliton, and each member of the Class, had a contract with Defendant. The terms of the contract are set forth in the promissory note. The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

77.    In Section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," Defendant agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid." Exhibit A, FHA Multistate Fixed Rate Note, at 1, ¶ 2 (emphasis altered).

78.    In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Defendant agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**." *Id.* at 1, ¶ 5 (emphasis altered).

79.    The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan." 24 C.F.R. § 203.558(a) (2014) (emphasis added). "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, **or tender of prepayment**." 24 C.F.R. § 203.558(c) (2014) (emphasis added).

21

80.        In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Defendant is subject to this duty as well.

81.        Defendant breached the contract by collecting post-payment interest payments from Colliton, and the other members of the Class, without first providing the FHA-approved form.

82.        Colliton, and the other members of the Class, were injured by Defendant's breach and seek damages for Defendant's unlawful collection of post-payment interest. Colliton, and the other members of the Class, seek damages for interest collected for the period beyond the date payment of the full unpaid principal was made.

## COUNT II
## UNJUST ENRICHMENT (IN THE ALTERNATIVE)

83.        Colliton incorporates paragraphs 1 through 73, above, as if fully stated herein.

84.        Should this Court find that no contract provision expressly governs the claims arising from the allegations of this Complaint, Colliton asserts that Defendant knowingly received and retained benefits from her and the other members of the Class under circumstances that render Defendant's retention of such benefits unjust.

85.        Defendant's assertion of the right to be paid post-payment interest was unjust, deceptive, unlawful, and against public policy and FHA regulations.

86.        The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out [in this regulation**], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan." 24 C.F.R. § 203.558(b)(2) (2014) (emphasis added). "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but **only if** [the lender] so advises the [borrower], **in a form approved by the Commissioner**, in response to the [borrower's] inquiry,

request for payoff figures, **or tender of prepayment**." *Id.* (emphasis added).

87.    As such, under the FHA regulations, lenders cannot **lawfully** collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day other than the first of the month and (b) the lender has provided the borrower the FHA-approved form.  If the lender satisfies **both** of those requirements, then, **and only then**, can the lender **lawfully** collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

88.    As stated above, Defendant collected post-payment interest payments from Colliton, and the other members of the Class, on FHA insured loans without first providing the FHA-approved form.

89.    Because Defendant collected post-payment interest payments from Colliton, and the other members of the Class, without first providing the FHA-approved form, Defendant's collection of post- payment interest was unlawful.

90.    An action for unjust enrichment is founded upon the equitable principle that no one ought unjustly to enrich herself at the expense of another.

91.     Defendant unfairly received and unjustly benefitted from financial gain achieved by charging for unauthorized post-payment interest.

92.    As an actual and proximate result of its actions, Defendant improperly and unfairly received and unjustly retained benefits at the expense of and detriment to Colliton and the Class in the form of those post-payment interest charges.

93.    A claim for unjust enrichment is maintainable in all cases where one has received money under such circumstances that, in equity and good conscience, she ought not to retain it, and it belongs to another.

94.     Because Defendant's collection of post-payment interest from Colliton and the other members of the Class, was unlawful, Defendant is in possession of millions of dollars of unlawfully collected interest that rightfully belongs to Colliton and the other members of the Class.

95.     Because Defendant's collection of post-payment interest from Colliton, and the other members of the Class, was unlawful, Defendant, in equity and good conscience, is not entitled to retain the unlawfully obtained post-payment interest collected from Colliton and the other members of the Class. Thus, it is unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class.

96.     In fact, the FHA regulations (24 C.F.R. § 203.558(b)(3)) expressly state that such unlawfully obtained post-payment interest should be forfeited. *Id*. ("If the [lender] fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, **the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received** and to such other actions as are provided in part 25 of this title.") (emphasis added).

97.     Consequently, there is no justifiable reason why Defendant should be allowed to retain the unlawfully obtained post-payment interest payments of Colliton and the other members of the Class.

98.     As a direct and proximate result of Defendant's actions, Defendant has been unjustly enriched, and Plaintiff and the Class have a right to restitution.

99.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Class is unjust and inequitable, Colliton, and the other members of the Class, are entitled to recover from Defendant all unlawfully collected post-

24

payment interest. Colliton thus seeks disgorgement and restitution of all such post-payment interest revenue gained through Defendant's unjust enrichment at the expense of Colliton and the Class, specifically interest collected for the period beyond the date payment of the full unpaid principal was made, plus prejudgment interest, and costs.

**WHEREFORE**, Plaintiff Mary Kay Colliton, individually and on behalf of all others similarly situated, pray that judgment be entered in her favor and against Defendant, Bank of America, N.A., as follows:

A.     That the Court adjudge, decree and certify that the present case may be properly maintained as a class action, appoint Colliton as the representative of the Class, and appoint Colliton's counsel as counsel for the Class;

B.     That the Court grant judgment as a matter of law in favor of Colliton and the Class, and against Defendant, on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

C.     That the Court award the aggregate damages of the Class members who have been assessed and paid unauthorized post-payment interest;

D.     Alternatively, that the Court order restitution for disgorgement of monies wrongfully received by Defendant as unauthorized post-payment interest;

E.     That the Court enjoin Defendant from engaging in the conduct complained of herein;

F.     That the Court award prejudgment interest;

G.     That the Court award post-judgment interest;

H.     That the Court award reasonable attorneys' fees and litigation costs; and

I.     That the Court grant such further relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.


Dated: August 28, 2019                      Respectfully submitted,
                                            MARY KAY COLLITON, individually, and on
                                            behalf of all others similarly situated,


                                            By: /s/ John G. Felder, Jr.

                                            John G. Felder, Jr. (Fed ID#6441)
                                            **McGOWAN, HOOD & FELDER, LLC**
                                            1517 Hampton Street
                                            Columbia, SC  29201
                                            Telephone: (803) 779-0100
                                            jfelder@mcgowanhood.com